Opinion op the Court.
James Kenny deceased, in his lifetime, made and-published his last will and testament, containing among others the following devises. I give and bequeath unto my grand children, the children of James Kenny, my son, deceased, the following tract of land, part of my preemption on Stoner; beginning at three hickories and two sngartrees on the bank of the creek; thence north ten degrees east with my line 160 poles, parallel with the first line to the creek, and down the creek to the beginning, to them .and their heirs forever.
*303 1 give unto my son, John Kenny, the farm on which he now lives to be invested with the title after one ’'year, which farm or tract is hounded as follows; beginning on my line 160 poles from the creek; thence north ten degrees east, with my line to the Mountster-ling road, and with the road to Clinkinbeard’s line; thence at right angles with the first line to the corner of the tract of land that I left to my grand children, the children of James Kenny deceased, and with their line to the beginning.
I give and bequeath unto my beloved wife, the farm on which I now live during her single life, and at her death or marriage, I then give the same unto my sons, Victor Kenny and Joseph Kenny, the residue of my tract on Stoner, to be equally divided between .them; but it is my will that when the same is divided Victor’s part is to include the farm on which I now live, to them and their heirs forever.
■ I leave the farm Edy Kenny now lives on, to the said Edy Kenny during her life, or so long as she continues unmarried, allowing her sufficient timber for the, use of said farm.
After,the death of the testator his’will was regularly proved and admitted to record in the county court of Bourbon where he died.
The devisee, John Kenny, together with the devisees, children of James Kenny deceased, then exhibited their bill in equity, alleging that owing to the defective description contained in the will, the precise boundaries of the several tracts or parcels of land intended to be divided to them, could not be ascertained, and after making the widow of the testator and Victor and Joseph Kenny defendants, prayed for partition to be decreed of the testator’s entire part on Stoner, between the complainants, John and the children of James, and Victor and Joseph Kenny, >&c.
On a final hearing the circuit court was of opinion, that fi’om the will, precise limits could not be given to the several portions of the tract intended to be devised; but supposing that enough existed in the will to shew that the testator intended his tract on Stoner, should be divided between the complainants and the defendants, Victor and Joseph, and perceiving that Edy Kenny the widow of James, was allowed by the will to have the use of the farm intended for Jaraes’children du *304 ring her life or widowhood, and that the mother of Victor and Joseph was to enjoy the farm intended for them during her life or widowhood, pronounced an interlocutory decree, directing the safe part of the tract on Stoner to be divided in four equal parts, and that the children of James should be entitled to one fourth, and John, Victor and Joseph, each a fourth, at the same time ordering thatEdy Kenny, the widow of James, should be permitted to enjoy the part of James’ children during her life or widowhood, and that the mother of Victor and Joseph should enjoy their part during her life or widowhood; and appointed commissioners to make the partition, instructing them at the same time that in doing so they should'allot to each the farm intended for him by the testator &c.
From this decree, by consent of the parties, an appeal ivas granted the defendants.
That there exists some uncertainty as to the precise boundaries which were intended by the testator for the land devised by him to the children of James Kenny, and that devised to John Kenny, cannot be denied. The uncertainty is not, however, in the opinion of this court, of a character which ought to produce the result given to it by the circuit court. It nray, we apprehend, from the different devises contained in the will, when applied to the peculiar condition of the testator’s tract on Stoner,'be rationally inferred, that by the -decree to the children of James, the testator intended to invest them with all that land which might be embraced within lines beginning on the bank of the creek at three hickories and two sugartrees, and running with the line of his preemption north ten east 160 poles; thence at right angles thereto eastwardly so far that a parallel line with the first line will barely include the farm on which Edy Kenny, the widow of the testator’s son James, lives, and thence with that parallel line to the creek, and with the creek to the beginning; reserving, however, to the widow of James the use thereof during hex*' life or widowhood, as directed by the testator in a different devise to her.
The devise to the children of James, it is true, contains no suggestion that the line from the point at the termination of the 160 poles from the beginning, should be extended at right angles from the line extended 160 poles from the beginniirg; but it is evident as well from *305 ■ihé absurdity of the thing as from the impracticability of complying with the last call to run up the creek to ítie beginning, that the expressions in the devise, “parallel with the first line to th'e creek,” could hot have been intended by the testator to require the land designed for the children of James to be so circumscribed as that after extending the 160 poles from the beginning, a line should be from that point extended directly back on the same line to the beginning; it must have been intended by those expressions, “ parallel with the first line to the creek,” to give directions for a line to be extended from the termination of a pretermitted line in the will, and that pretermitted line, we1'infer, was designed by the testator to be at right angles from the first line. We infer so, not only because a line at right angles would give a more comely figure to the tract devised to the children of James, and conform better to what is supposed would be the common understand- ■ ing, but by the expression parallel in the demise' to the children of James, and the expression right angles com laiued in the devise to John, it is most probable the testator intended to give the lines of the several tracts he was about devising, a right angulai direction, whenever the situation of bis original tract admitted of it.
Bat supposing it to have been intended by the testator that the line from the 160 poles distance on the first line should be extended at yiglit angles, we are met with an objection, that the devise contains nothing' to limit the extent of that line.
The force óf the objection is perceived and has been felt by the court. It is admitted, the devise to the children of James Kenny, contains no expression which indicates with absolute certainty the precise distance the line at right angles from the first line, was intended by the devisor to be extended, and the force of.the objections rests on the uncertainty thereby produced in the devise.
But other circumstances are shown to exist, which, in the opinion of the court, afford convincing evidence that the finest right angles was intended by the devi-sor not to stop short of a point sufficiently distant from the termination of the 160 poles from the beginning, that a"line passing therefrom parallel with the first line would include all the improved laqd contained .in the farm whereon Edy Kenny, the widow of James, lives. *306 For that farm connects itself immediately with timbé-ginning called for in the devise to the children of James and extends along the first line upwards of one hundred poles, and it is not to be presumed that the devisor when about to make a division of his lands by will among his relatives, would have been disposed so to direct the boundary of the part devised to either, as that any line thereof would pass through so small an improvement as that upon which Edy Kenny lives-, and the improbability of such an intention in the devisor as respects the devise to the children of .James, is increased by the circumstance of his having in another part of his will devised the use of that farm to Edy Kenny the mother of those children during her life or widowhood, and it derives still greater strength from the fact of the devisor in other devises, where his intention is more clearly expressed, having shewn a fixed design not to split up the improvements which existed upon the huid between devisees mentioned in different devises.
Hence, we infer, that the uncertainty upon which the objection to the devise to the children of James Kenay rests, is not of a character calculated to produce a reasonable doubt but that the line at right angles from the first line, was intended by the devisor to extend so far, that a line passing therefrom parallel with the first line, will include all the farm upon which Edy Ke-uy lives; the uncertainty consists, only, in the doubt whether the devisor may not have intendéd the line at right angles from the first line should extend farther, so that more land would be comprehended by a line parsing therefrom parallel with the first line. But admitting that uncertainty to exist, it surely ought not, and, v, e apprehend, cannot render void the devise as to thru part which is shewn to be sufficiently certain. The circuinsrauce of its being uncertain whether the devi-sor may not have intended that the line should extend f h.r, is no reason why it should not extend so far. The if u cannot be extended farther than the certain point, be ?n use farther than that, it cannot be a* ertained the devisor intended it should go; but it may go to the point of certainly, because to that point the devisor evidently intended it should go.
It remits that under the devise to them, the children of James are entitled to all the land comprehended *307 within the boundary which we have already mentioned and which we suppose to be defined with sufficient certainty in the will; but beyond that boundary, there is nothing contained in the will calculated to shew, the devisor intended they should be entitled, and without such an intention on the part of the devisor it is beyond.' the power of this court to decree the title to them..
Having ascertained the boundary of the tract devised to the children of James Kenny, we are led to consider tlie devise to John Kenny.
With respect to the first and second lines mentioned in the devise to John Kenny there is no difficulty. The beginning is fixed with unerring certainty by the termination of the first line contained in the devise to the children ofJam.es Kenny, and the Mountsterling road us certainly terminates the line to be extended from the beginning; and that road until it strikes Clinkiri-beard’S line, forms the second line of the tract devised to John. It is true, the Mountsterling road crosses-moje than one, line of Clinkinbeard; but as the first linddf Clinkinbeard appears to have been established by a de* cree made in a contest between the devisor and;.Clin-kinbeard, andas by pursuing that road farther thh£).'tliat line would throw within the devise to John, land which had 'been decreed to Clinkinbeard, it is iposi probable, by calling for the line of Clinkinbeard, the de-visor intended to make the Mountsterling road to the first line of Clinkinbeard, and no further, the boundary of the tract devised to John. So far we have said there exists no difficulty in the devise to John; but af-terarriving at the line of Clinkinbeard the devise proceeds- to describe the boundary to extend, “ thence at right angles with the first line to the corner of the tract of land, &c.” and the question occurs as to the effect of that description of boundary on the line tó be extended next from the Mountsterling road. And here again it is proper to remark, that the writer of the will must have omitted to insert some further description of the boundary of the tract intended to be devised to John. He most obviously made such omission, because in a previous part of the devise, the whole of the farm whereon John lived, had been given to him, and by extending^ line, at right angles with the first line from the Mou.ntsterling-read at Clinkinbeard’s line, no part o f John Kenny’s farm, and but a slight angle of any *308 land, will be included in the devise to John. But it may be asked, what is the further description which was intended by the devisor, and which was omitted by the writer of the will?
We answer, from all the circumstances it is most probable, .that from the Mountsterling road at Clinkin-beard’s line, the devisor intended the tract given to. John should bind on the decreed lines of Clinkinbeard so far that a line, extended from thence at right angles with the first line, would strike the corner of the land devised to the children of James Kenny. He must have intended the lines of Clinkinbeard to form the boundary of the tract devised to John Kenny, not only because one of the lines of John’s boundary is directed to proceed to the line of Clinkinbeard, and another is directed to extend from Clinkinbeard; but because moreover, any other boundary than that of Clinkin-beard’s line which he adopted for the tract devised to John Kenny, would either encroach upon the land of Clinkinbeard or exclude from the tract of John, part of his farm which extends from Clinkinbeard’s line entirely across to his first iine; neither of which, it is pre-. sumed,' can have been intended by the testator. It is apparent, however, that a line at right angles to the first line of John Kenny, extended from any possible point on the decreed boundary of Clinkinbeard, will not strike the corner which we have assigned to the children of James Kenny under the devise to them; but that circumstance does not repel the inference we have drawn as to the intention of the devisor, lo limit the tract devised to John Kenny by the lines of Clin-kinbeard. It proves nothing more than that the devisor labored under a slight delusion in supposing a line exr tended from Clinkinbeard’s boundary at right angles to John's first line, would strike the corner of the children of Jaires; whereas, instead of striking that corner a line at right angles with the first line, when extended from the most southern corner of Clinkinbeard, will diverge a few poles to the north of it. But the delusion existed only in a mistake in the course of that line, and may be corrected by making the course yield so far as is necessary to comply with the express call in the description contained in the devise, to extendjfrom Clinkinbeard- to the corner of the children of James.
*309 Upon the whole, we think that by the devise to John, he has become invested with the legal title to that tract or boundary of land, beginning on the line of the divi--sor’s preemption one hundred and sixty poles from the creek, and extending along that line to the Mountster-ling road; thence with the Mountsteriing.road.to'the first line of Clinkinbeard which that road intersects thence with and binding on the decreed lines of Clin-kinbeard to the most southern- corner thereof, and thence a direct course to the most north eastern corner of the tract of the children of James Kenny when laid down as we have directed in this opinion it should be; and thence with the line of that tract to the beginning.
It results, therefore, that the complainants, in the court below have shewn no sufficient cause for applying to a court of equity, and that instead, of the decree which was pronouncedly that couft; their bill ought to have been dismissed with costs. •
The decree must consequently be reversed with costs, the cause remanded to the court below and the decree there entered in conformity with this opinion.