## Elliott v. Drury's Adm'x.

March 25, 1949.

Woodward, Hobson & Fulton for appellant.
Errol W. Draffen, W. Earl Dean and J. W. Gaines for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is the second appeal in this case. At the first trial Margaret Drury, administratrix of the estate of her husband, William Drury, recovered a judgment from G. Cooksey Elliott for $10,000 for the death of her husband and $300 for damages to his automobile, all resulting from an automobile collision. The judgment was reversed for errors in the instructions. Elliott v. Drury's Adm'x, 304 Ky. 93, 200 S.W.2d 141. At the second trial the plaintiff recovered a judgment for $12,000 for the death of William Drury and $400 for damages to the automobile. On this appeal the sole ground urged for reversal is improper argument by counsel for appellee which consisted of certain statements concerning two of appellant's witnesses, Mr. and Mrs. Truman Cornish. It is argued that in view of the importance of the testimony of these two witnesses the argument was highly prejudicial.

The evidence on the two trials was substantially the same. The facts and circumstances surrounding the accident, as developed by the appellee, may be found in the opinion on the former appeal and will not be repeated here, but the substance of the testimony of Mr. and Mrs. Cornish will be given since it provided the background for the alleged improper argument.

Truman Cornish and his wife lived in Lexington and, with their four year old child, were on their way to visit his father in Anderson County on the day the accident happened. They traveled by bus from Lexington to Lawrenceburg, and upon arriving there Cornish saw William Drury and asked him if the Cornishes could ride with him to the country. Apparently Cornish's father and Drury lived in the same neighborhood. Drury consented, and they left Lawrenceburg with Mr. and Mrs. Drury and their two year old child in the front seat of the automobile and the Cornishes and their child in the rear seat. The Cornishes testified that Drury was drinking heavily, and was drunk at the time of the accident. They warned him several times about his reckless driving, and on one occasion Mrs. Drury protested and decedent said: "If you think you can drive any better than I can, get hold of the wheel." They testified that the decedent was driving rapidly on the wrong

side of the road when the collision with appellant's car occurred. Mrs. Drury contradicted their testimony in its entirety, and there was testimony by several disinterested witnesses which tended to show that Drury was not drunk. Truman Cornish was impeached to the extent that it was developed on his cross-examination that he had been convicted of a felony, chicken stealing, and had served a term in the state reformatory. Several witnesses testified that his reputation for veracity was bad.

In his argument to the jury, counsel for appellee, in discussing the testimony of Mr. and Mrs. Cornish, said:

"Now, then, I want to go back, briefly, to the testimony that has been engendered into this case in a desperate desire and effort to show that this man Drury was at the time that his life was taken was drunk. It is very unfortunate, it is very unfortunate that we would have two people in our land like Truman Cornish and his wife, Mrs. Truman Cornish, and I say that advisedly. I have practiced law until my hair has come out to some extent, and maybe more than I would care to admit, and until I am gray, and many times I have stood before Anderson County Jurors, having been born and raised among you. I don't believe in all of my experience as a lawyer I have ever seen two people whose statements upon the witness stand were charcteristic of more bitterness and feeling and prejudice and bias than these two people. A man may go to the bank, put a mask over his face and at the point of a gun can get the teller or cashier to deliver his money to him and get away. He has taken something and has got something for nothing. I don't believe that is as bad as the man or woman, who for gain, or for bias or prejudice, or for some other reason would deliberately in my opinion—"

At this point an objection was interposed. The court overruled the objection, but said to counsel for appellee: "Confine yourself to the testimony." Counsel for appellee then said:

"Gentlemen, I don't want to say anything here that is not in the record, but I want to be free and I think it is within my duties as an attorney to comment upon the testimony, the effect of testimony that has been given here on the witness stand, and as long as I keep within the bounds of law I think I am justified in

making any comments that the evidence will justify, but I do want to say this to you, you heard the ladylike statement of Mrs. Drury, the wife of William Drury, you heard the fair, intelligent statement made by Mrs. Robinson, you heard the statement made by Mrs. Rutherford, all with reference to whether or not this young man, William Drury, on that occasion was drunk or drinking.''

At the conclusion of the argument counsel for appellant moved the court to discharge the jury because of the statement of opposing counsel in his argument that Cornish, in his opinion, had testified for gain. Counsel for appellee stated that he had a right to explain to the jury the testimony of any witness showing it was not the truth, whereupon the court said:

''I am going to admonish the Jury not to consider the statement you made with reference to the fact that the Cornishes might have been testifying for gain in your opinion; I am overruling the motion to discharge the Jury.''

Before the jury retired the court admonished it as follows:

''I want to admonish you before you retire not to consider the statement made by Mr. Draffen in his argument to the effect that either of the Cornish witnesses stood to gain by the outcome of the trial. There was no evidence to that effect in the record, to support that statement in the record.''

Stenographic notes of the argument of appellee's counsel were made and transcribed, and the argument in full appears in the record. Except for the use of the word ''gain,' when discussing the testimony of the Cornishes, we fail to find that counsel departed from the record or made any improper or prejudicial statements or unwarranted deductions from the evidence. Great latitude must be allowed counsel in arguments, but they must adhere to the facts and may not make statements calculated to excite the passions of jurors. Strong v. Abner, 268 Ky. 502, 105 S.W.2d 599. However, verdicts should not be set aside for every infraction of the rule, especially where the court admonishes the jury in regard to the improper statement. Where the court properly admonishes the jury, the judgment will not be reversed

unless the argument is so prejudicial under the circumstances of the case that the admonition of the court will not cure it. Thomas v. Smith, 302 Ky. 636, 195 S.W. 2d 274. There are no hard and fast limitations within which the argument of counsel must be confined. He may discuss the facts proved, draw reasonable deductions therefrom, and may attack the credibility of witnesses where his remarks are based on facts appearing in the evidence. Simmons & Co. v. Price's Adm'r, 238 Ky. 332, 38 S.W.2d 6. Here, there was impeaching evidence warranting comment on the credibility of the witness Truman Cornish, but there was no evidence that he had perjured himself for gain. Counsel did not state as a fact that the Cornishes had testified for gain, but apparently was about to state that in his opinion they had done so when he was interrupted by the objection. At least, his statement carried an implication of a fact not borne out by the record and was improper, but we are not prepared to say that it was prejudicial in view of the admonition of the court given when the motion to discharge the jury was made. It must be assumed that the jury is composed of sensible and reasonable men and women capable of analyzing and applying an argument in the light of the evidence and the admonitions and instructions of the court. There is nothing in the record, including the verdict, which indicates that passion and prejudice on the part of the jury was aroused by the improper statement. The insinuation contained in the statement appeared but once, and counsel, on being warned by the court, avoided its repetition. It was probably a slip of the tongue, resulting from the heat of discussion, and in view of the court's pointed and positive admonition to the jury to disregard it, we are of opinion it was not so prejudicial as to authorize a reversal.

Judgment is affirmed.