**Jane B. SUTHERLAND, Movant,**

**v.**

**GREAT FIDELITY LIFE INSURANCE COMPANY, Respondent.**

Supreme Court of Kentucky.

April 10, 1986.

Richard V. Beliles, Louisville, for movant.

Louis N. Garlove, Louisville, for respondent.

STEPHENS, Chief Justice.

The issue presented, one of first impression in the Commonwealth, is whether the phrase "fare paying passenger" in an insurance contract includes an insured who made payments to a pilot who was not authorized to carry passengers.

The trial court denied the insurance company's motion for a directed verdict and awarded the beneficiary an accidental death benefit of $100,000 based on a jury finding that a fare had been paid. The Court of Appeals reversed, holding that any alleged payment was void because it violated KRS 183.100.

We reverse. The jury's determination that a fare was paid sufficiently fulfilled the requirements of the insurance policy.

James B. Sutherland, the insured, was killed in an airplane crash near Pine Knot, Kentucky on April 10, 1981. The National Transportation Safety Board determined the probable causes of the accident to be an "unqualified person operated aircraft" and "improperly loaded aircraft—weight—and/or fire after impact".

Respondent, Great Fidelity Life Insurance Company, had issued a life insurance policy to Sutherland which provided death benefits of $100,000 and an optional "accidental death benefit" of $100,000. This optional benefit contains many exclusions from coverage, one of which is the primary subject of this dispute.

The accidental death benefit which the insured selected excluded "travel or flight in or descent from any kind of aircraft except as a fare paying passenger." The insured *did not select* the other option for additional coverage, common carrier accident benefit. That clause provided payment only for "accidental bodily injury sustained while the [i]nsured is traveling as a *fare paying passenger* on a licensed public conveyance operated by a licensed common carrier for the regular transportation of passengers." (emphasis added).

Respondent paid the $100,000 death benefit to Sutherland's widow, the movant. The company refused to pay the additional benefit, arguing that the insured's death occurred under circumstances which excluded coverage. At the conclusion of the evidence presented at trial on September 21 and 22, 1982, respondent moved for a directed verdict. The trial court overruled the motion and the jury returned a verdict for the beneficiary.

Evidence was presented that the pilot received a fare from Sutherland. The movant, who served as office manager for her husband's business, stated that he normally paid cash for his air transportation. The pilot's brother testified that the pilot had in the past accepted payment for transporting people by air. Furthermore, $516.00 in cash and an additional large but indeter-

minable amount of cash was found on the pilot's body.

Respondent contends that the exclusion from coverage applies because the pilot lacked a full commercial license to transport passengers. It is uncontested that the pilot was issued a "third-class medical/student pilot certificate with the limitation 'must wear corrective lenses.'" However, the language of the policy to which the parties contracted does not contain any specification but that the insured be a "fare paying passenger." It is an altogether too familiar principle that:

> "[I]n the construction of insurance policy contracts ... the contract shall be liberally construed and any doubts resolved in favor of the insured." *State Farm Mutual Automobile Insurance Company v. Shelton*, Ky., 413 S.W.2d 344, 347 (1967).

Respondent drafted the contract's language and must comply with its prerequisites. Respondent's assistant counsel testified at trial about the language used for the various options of coverage. One option available from respondent specifically limits coverage to accidents which occur while the insured is in the care of "a licensed common carrier for the regular transportation of passengers." The insurance company could have so restricted all available policies, but it did not choose to do that. Thus, the insured was not put on notice by the policy of any requirement besides that of being a fare-paying passenger.

Respondent argues that the pilot's violation of KRS 183.100 prevented the creation of any contract for fare between the pilot and the insured passenger. That statute is as follows:

> "No person shall operate any aircraft within the state in any form of navigation whatsoever in violation of the air traffic rules promulgated by the department or the federal aviation administration."

Though the pilot obviously violated this statute, the passenger had no duty to ascertain whether the plane and pilot could pass an inspection. The insurance company cannot reap advantages for which it has not contracted.

Respondent also contended that coverage should be denied under the exclusion of death resulting from "committing or attempting to commit an assault or felony." Some evidence tended to show that the pilot and passenger were involved in transporting controlled substances. However, the jury returned a verdict for movant and we decline to overrule their findings.

For the above reasons, we reverse. The insurance company cannot deny coverage when the insured complied with the prerequisites which appeared on the face of the policy.

All concur.